IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COLE & ASHCROFT, LP DBA | § | |
| SHUTTERS PLUS | § | |
|     *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-cv-03507 |
| | § | |
| STATE AUTOMOBILE MUTUAL | § | |
| INSURANCE COMPANY | § | |
|     *Defendant.* | § | |

## DEFENDANT STATE AUTOMOBILE MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

Defendant State Automobile Mutual Insurance Company ("State Auto") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to all causes of action asserted by Plaintiff Cole & Ashcroft, LP DBA Shutters Plus ("Plaintiff").

## SUMMARY OF MOTION

1.    The hail dents on the metal roof surfaces on Plaintiff's roof are cosmetic. Cosmetic damage from hail to roof surfaces is excluded from coverage under the State Auto insurance policy. Even Plaintiff's own expert, Peter De La Mora, agrees there are cosmetic hail dents on the roof. While he suggested in his testimony that there may be other hail dents to roof panel seams that are not cosmetic, he did not identify any of these functional hail dents and none have been identified by Plaintiff. In other words, Plaintiff seeks recovery from State Auto for full roof replacement purportedly as a result of hail dents without evidence of which hail dents, if any, are functional damage rather than merely cosmetic damage. Because Plaintiff has no evidence from which a jury can distinguish which roof panels may be functionally damaged by hail from those roof panels that have only undisputed cosmetic damage or pre-existing conditions, Plaintiff's claim fails as a matter of law.

2.      Moreover, Plaintiff has already fully recovered insurance benefits for replacement of the roof at issue.  State Auto discovered during the course of litigation that Plaintiff separately pursued a claim against another insurer for replacement of the same roof as a result of wind damage from Hurricane Harvey and recovered $381,887.50 in that claim.  Indeed, Mr. De La Mora's report was utilized by Plaintiff in support of the other claim because Mr. De La Mora's core opinion is that, despite there being hail dents, the roof required replacement solely as a result of wind from Hurricane Harvey.  The appraisers designated by the parties in this case and the umpire they selected agreed the actual cash value of the roof replacement was $359,984.62.  Thus, even if Plaintiff had evidence that certain hail dents are not merely cosmetic, Plaintiff has already recovered more than the value of the roof from other insurance.   Plaintiff is attempting to recover twice for the loss of the same roof.

3.      Plaintiff's extra-contractual claims fail because, among other reasons, State Auto reasonably investigated Plaintiff's claim and, at worst, there is a bona fide dispute as to the extent of coverage under the Policy for hail indentations.

## SUMMARY JUDGMENT EVIDENCE

4.      State Auto attaches the following exhibits in support of this Motion for Summary Judgment:

> Exhibit A: Certified Copy of State Auto Commercial Property Policy No. PBP 2832159 00, effective June 5, 2018 to June 5, 2019;
>
> Exhibit B:  Declaration of Ashley Manning;
>
>     a.  Exhibit B-1: August 2, 2019 Acknowledgement Letter from State Auto;
>
>     b.  Exhibit B-2: August 5, 2019 E-mail from Ray Demeritt with attached "Notice to Insurance Company";
>
>     c.  Exhibit B-3: August 6, 2019 Letter from Ashley Manning;

    d.  Exhibit B-4: September 5, 2019 Letter from Ashley Manning;

    e.  Exhibit B-5: September 5, 2019 Nelson Forensics Report authored by Matthew Oestrike;

    f.  Exhibit B-6: State Auto estimate finalized September 16, 2019;

    g.  Exhibit B-7: September 26, 2019 Letter from Ashley Manning (without attachments);

    h.  Exhibit B-8: October 2, 2019 Letter of Representation from Derek Fadner;

    i.  Exhibit B-9: October 2, 2019 Letter from Derek Fadner invoking appraisal;

    j.  Exhibit B-10: October 21, 2019 Letter from Patrick Kemp;

    k.  Exhibit B-11: August 7, 2020 Appraisal Award with incorporated Estimate;

    l.  Exhibit B-12: August 13, 2020 Letter from Ashley Manning;

Exhibit C:  Matthew Oestrike Deposition excerpts;

Exhibit D: National Public Adjusting "Notice to Insurance Company" from Plaintiff's Hurricane Harvey claim;

Exhibit E:  National Public Adjusting estimate for May 9, 2019 Date of Loss;

Exhibit F:  National Public Adjusting estimate for August 28, 2017 Date of Loss;

Exhibit G: Plaintiff's Original Petition in Cole and Ashcroft, LP vs. Certain Underwriters at Lloyds, London;

Exhibit H:  Plaintiff's Settlement with Certain Underwriters at Lloyds, London;

Exhibit I:  Peter De La Mora Deposition excerpts;

Exhibit J:  PE Service Report authored by Peter De La Mora; and

Exhibit K:  John Lines Deposition excerpts (appearing as Plaintiff's FRCP 30(b)(6) witness).

## SUMMARY JUDGMENT STANDARD

5.      Summary judgment is proper in any case where the pleadings and evidence show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] A fact is "material" if its resolution could affect the outcome of the action.[2] If the record, taken as a whole, could not lead a rational fact finder to find for the non-moving party, there is no genuine issue for trial.[3] "At the summary judgment stage, facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts."[4]

6.      The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.[5]  In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.[6] The moving party, however, "need not negate the elements of the nonmovant's case."[7] The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case.[8]

7.      Once the moving party meets its initial burden, the non-moving party must go beyond allegations in the pleadings and come forward with specific evidentiary facts indicating a

---

[1] Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[2] *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).

[3] *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

[4] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[5] *Celotex Corp.,* 477 U.S. at 323; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[6] *Celotex Corp.*, 477 U.S. at 325.

[7] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

[8] *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

genuine issue for trial.[9]   There must be "significant probative evidence" on which a jury could reasonably find for the non-movant in order to overcome summary judgment.[10] The non-movant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial."[11] To satisfy his burden as a non-movant, a plaintiff is "required to identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence supported [its] claim."[12]

## **FACTS**

8.      This is a first-party insurance dispute over the extent of coverage for hail damage to Plaintiff's commercial building located at 5631 Brystone Drive, Houston, Texas 77041 (the "Property") arising out of a May 9, 2019 hail event.[13] State Auto insured the Property under Commercial Property Policy No. PBP 2832159 00 (the "Policy") for the policy period of June 5, 2018 to June 5, 2019.[14] The Policy provides coverage for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."[15]   As set forth in the Commercial Property Conditions, the Policy provides coverage for loss or damage commencing during the policy period.  Additionally, any

---

[9] *Celotex Corp.*, at 324; *Levy v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

[10] *Liberty Lobby*, 477 U.S. at 256.

[11] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Liberty Lobby*, 477 U.S. at 255-57).

[12] *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994).

[13] Doc. No. 1-1, Plaintiff's Original Petition at pp. 4-5 of 23, ¶¶ 1-11.

[14] Exhibit A, Policy, Preferred Business Policy Common Declarations, at Bates stamped page 00028.

[15] Exhibit A, Policy, Building and Personal Property Coverage Form, Section A, at Bates stamped page 00053.

claim for wind or hail damage is subject to a wind and hail deductible equal to 5% of the building coverage limit of $1,750,000, which amounts to $87,500.[16]

9.     The Policy contains an endorsement entitled "Limitations on Coverage for Roof Surfacing," which includes a schedule identifying the applicability of Paragraph B that states:

> The following applies with respect to loss or damage by wind and/or hail to a building or structure identified in the Schedule as being subject to this Paragraph B.:
>
> B.     We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.
>
> C.     For the purpose of this endorsement, roof surfacing refers to the shingles, tiles, cladding metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.[17]

10.     Plaintiff did not report the May 9, 2019 hail claim to State Auto until August 1, 2019.[18]  State Auto's claim representative, Ashley Manning, sent written acknowledgement of the hail claim to Plaintiff on August 2, 2019.[19]  On August 5, 2019, Ray Demeritt, the owner of National Public Adjusting, e-mailed Manning attaching a "Notice to Insurance Company,"

---

[16] Exhibit A, Policy, Windstorm or Hail Percentage Deductible, at Bates stamped page 00047 ("We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible…"); *see also* Exhibit A, Policy, Preferred Business Policy Common Declarations, at Bates stamped page 00028 (showing building limit and 5% wind/hail deductible).

[17] Exhibit A, Policy, Limitations on Coverage for Roof Surfacing, at Bates stamped page 00108.

[18] Exhibit B, Declaration of Ashley Manning at ¶ 3.

[19] Exhibit B-1, August 2, 2019 Acknowledgement Letter from State Auto.

advising of his representation of Plaintiff.[20]  The following day, on August 6, 2019, Manning sent a letter to Demeritt acknowledging his representation and informing him that Gerald Ptacek had been assigned to conduct an inspection of the property.[21]  State Auto also retained Nelson Forensics to conduct an engineering inspection and determine the scope of damage attributable to the May 9, 2019 hail event and whether any such hail damage on the roof was functional damage or cosmetic.[22]

11.     Matthew Oestrike with Nelson Forensics, Gerald Ptacek with State Auto, and Plaintiff's public adjuster Ray Demeritt inspected the Property on August 21, 2019.[23]  On September 5, 2019, Manning sent a letter notifying Plaintiff that the investigation was not yet complete and that State Auto was awaiting the report from the engineer with Nelson Forensics.[24] The Nelson Forensics report was received later that day.[25]  The report authored by Matthew Oestrike with Nelson Forensics concluded as follows:

- The discrete circular indentations at the metal panel roofing, metal rake trim, metal cap flashing at the parapet walls, and metal casing at the ridge vents at the subject structure are consistent with hail impact during the reported date of loss. However, the indentations have not compromised the functionality, waterproofing capabilities, or life expectancy of the panels/components. Repairs to the roofing panels/components are not necessary nor does Nelson recommend any repairs at these items.

- A portion of the circular/radial tears at the older membrane tape flashing located at the base of the ridge vents at the upper roof are conservatively attributed to hail impact during the reported date of loss, and has compromised the waterproofing capability of this flashing. Nelson estimates that no more than 30

---

[20] Exhibit B-2, August 5, 2019 E-mail from Ray Demeritt with attached "Notice to Insurance Company."

[21] Exhibit B-3, August 6, 2019 Letter from Ashley Manning.

[22] Exhibit B, Declaration of Ashley Manning at ¶ 3.

[23] *Id.* at ¶ 4.

[24] Exhibit B-4, September 5, 2019 Letter from Ashley Manning.

[25] Exhibit B, Declaration of Ashley Manning at ¶ 4.

linear feet of this membrane tape flashing is affected by hail impact. The remainder of this membrane tape flashing requires repairs due to long-term deterioration and deferred maintenance, unrelated to hail.

- Hail impact has not damaged the exterior of the subject structure.[26]

12.    The report from Oestrike also noted localized kinks in the panel ribs at the R-panel roofing at the approximate mid-span between support locations due to improper foot traffic, unrelated to hail.[27]  And, the report from Oestrike noted irregular-shaped deformations and larger deformations at the ridge vents that were consistent with mechanical impact, also unrelated to hail.[28]

13.    Gerald Ptacek finalized an estimate for replacement of 30 linear feet of tape flashing that totaled $633.17 on September 16, 2019.[29]  Ashley Manning sent a letter to Plaintiff on September 26, 2019, attaching State Auto's estimate and the Nelson Forensics engineering report.[30]  The letter recited the relevant provisions in the Policy and explained that there is no coverage for the cosmetic hail damage, wear, tear, deterioration, or lack of proper maintenance.[31] The letter also advised that the functional damage totaling $633.17 did not exceed the applicable $87,500 deductible.[32]

---

[26] Exhibit B-5, September 5, 2019 Nelson Forensics Report authored by Matthew Oestrike, at Bates stamped page 01585; see also Exhibit C, Matthew Oestrike Deposition at pp. 60:22-83:17 (Mr. Oestrike testified at length as to the opinions set forth in his report) and p. 90:15-20 (Mr. Oestrike confirmed he does not intend to amend his report).

[27] Exhibit B-5, September 5, 2019 Nelson Forensics Report authored by Matthew Oestrike, at Bates stamped page 01583.

[28] Id.

[29] Exhibit B-6, State Auto estimate finalized September 16, 2019.

[30] Exhibit B-7, September 26, 2019 Letter from Ashley Manning (without attachments).

[31] Id.

[32] Id.

14.     Plaintiff's counsel, Derek Fadner, sent State Auto a letter of representation dated October 2, 2019.[33]  In a separate letter dated October 2, 2019, Plaintiff's counsel invoked appraisal under the Policy, designating Fred Lupfer as Plaintiff's appraiser.[34]  In response, State Auto complied with Plaintiff's demand for appraisal in accordance with the terms of the Policy and designated appraiser Brett Lochridge.[35]  State Auto's position was that the disagreement between Plaintiff and State Auto was one of coverage that would not be resolved by an appraisal and State Auto reserved its right to deny the claim.[36]

15.     The appraisers, Brett Lochridge and Fred Lupfer, and umpire Randy LeBlanc, signed an appraisal on August 7, 2020, that stated the actual cash value of roof replacement, including costs for moving a printing press and other contents, was $359,984.62.[37]  The signed appraisal stated the amount was "[p]er the attached Estimate which is an integral part of the award."[38]  The estimate includes allowances for, among other things, removal and replacement of the entire roof totaling over 33,691 square feet, removal and replacement of guttering, and moving a printing press and other contents for removal and replacement of the roof and insulation.[39]

16.     The signed appraisal also stated that any prior payments and deductible had not been applied and would need to be subtracted, and that coverage under the Policy would be addressed by others:

---

[33] Exhibit B-8, October 2, 2019 Letter of Representation from Derek Fadner.

[34] Exhibit B-9, October 2, 2019 Letter from Derek Fadner invoking appraisal.

[35] Exhibit B-10, October 21, 2019 Letter from Patrick Kemp.

[36] See *id.*

[37] Exhibit B-11, August 7, 2020 Appraisal Award with incorporated Estimate, at Bates stamped page 01722.

[38] See *id.*

[39] See *id.*, at Bates stamped page 01724-01726.

This award is made without consideration of any deductibles or prior payments. Such deductibles and prior payments will be subtracted from any payments due and owing because of the entry of this award. This award is made subject to all the terms, conditions, and exclusions of the above listed policy. Policy coverage to be addressed by others.[40]

17.     Following receipt of the signed appraisal award, on August 13, 2020, State Auto sent a letter to Plaintiff again denying the claim for cosmetic hail damage and concluding that, even with the guttering that was allowed by the appraisal panel, the covered portion of the loss remained below the $87,500 deductible.[41]  Plaintiff filed this lawsuit on October 13, 2020 without providing statutory pre-suit notice as required by Tex. Ins. Code § 542A.003.[42]

18.     Unbeknownst to State Auto at the time Plaintiff notified State Auto of the hail claim, Plaintiff had also retained National Public Adjusting to pursue a separate roof replacement claim against another insurer arising from wind damage from Hurricane Harvey with a reported date of loss of August 28, 2017.[43]  In fact, Ray Demeritt, the owner of National Public Adjusting, prepared virtually identical roof replacement estimates for both claims, with both including removal and replacement 33,691 square feet of roofing, removal and replacement of guttering, and moving a printing press and other contents for removal and replacement of the roof and insulation.[44]  While there are very minor price differences, the only key difference between the

---

[40] Exhibit B-11, August 7, 2020 Appraisal Award with incorporated Estimate, at Bates stamped page 01722.

[41] Exhibit B-12, August 13, 2020 Letter from Ashley Manning.

[42] Exhibit B, Declaration of Ashley Manning at ¶ 11; *see also* Doc. No. 1-1, Plaintiff's Original Petition.

[43] Exhibit D, National Public Adjusting "Notice to Insurance Company" from Hurricane Harvey claim.

[44] *See* Exhibit E, National Public Adjusting estimate for May 9, 2019 Date of Loss (roof is lines 1-13, guttering is lines 14-19, moving printing press is line 37, and moving other contents is line 41); *compare* Exhibit F, National Public Adjusting estimate for August 28, 2017 Date of Loss

two damage scopes was that the estimate for wind damage from Hurricane Harvey included extensive interior repairs with all interior leaks being attributed to Hurricane Harvey.[45]

19.     Until discovery was conducted in this lawsuit, State Auto was also unaware that Plaintiff filed a lawsuit against Certain Underwriters at Lloyds, London on August 23, 2019 based on the alleged failure to pay Plaintiff's Hurricane Harvey claim.[46]  Plaintiff settled that claim on February 24, 2020 in exchange for a payment in the amount of $381,887.50.[47]

20.     Plaintiff retained an expert, Peter De La Mora, who testified in this case that he was retained as an expert on both the Hurricane Harvey wind claim and the May 9, 2019 hail claim.[48] Mr. De La Mora confirmed his professional opinions in this case are set forth in his November 8, 2019 report.[49]  In that report, Mr. De La Mora reported observing many conditions on the roof, including wind-lifted roof panels, hail indentations on some roof panels, crimps from foot traffic, and concluded the roof and guttering required replacement as a result of wind damage during Hurricane Harvey:

> In our opinion, wind during Hurricane Harvey had sufficient force to cause the observed damage at the Cole & Ashcroft, LP building. As a result of wind damage during Hurricane Harvey, the metal roofs of the office and warehouse, and gutters of the Cole & Ashford, LP building, require removal and replacement.[50]

---

(roof is lines 1-13, guttering is lines 17-22, moving printing press is line 362, and moving other contents is line 366).

[45] Exhibit F, National Public Adjusting estimate for August 28, 2017 Date of Loss (interior repairs span pages 4 to 25).

[46] Exhibit G, Plaintiff's Original Petition in Cole and Ashcroft, LP vs. Certain Underwriters at Lloyds, London.

[47] Exhibit H, Plaintiff's Settlement with Certain Underwriters at Lloyds, London, at page 3.

[48] Exhibit I, De La Mora Deposition at pp. 5:14-6:10.

[49] Exhibit I, De La Mora Deposition at pp. 7:9-7:21; *see also* Exhibit J, PE Service Report authored by Peter De La Mora.

[50] Exhibit J, PE Service Report authored by Peter De La Mora, at page 12.

21.     Mr. De La Mora's deposition testimony was consistent with his report.  Mr. De La Mora described the roof as having crimps from foot traffic, cosmetic hail dents, mechanical damage (such as a sharp object), and wind-lifted roof components.  Taking all of those conditions into account, Mr. De La Mora remains of the opinion that the roof must be replaced as a result of wind from Hurricane Harvey.[51]

22.     As for the crimps on the roof, Mr. De La Mora testified that those happen when someone steps on the seams of the roof panels and nothing needs to be done about them because they are only cosmetic.[52]  Here is a picture from Mr. De La Mora's report depicting crimps from foot traffic:



Photograph 15:  Office Roof - Crimps on Office roof; foot traffic

23.     Here is a picture of what Mr. De La Mora opines is evidence of roof panels bent and separated by the pressure of wind from Hurricane Harvey:

---

[51] Exhibit I, De La Mora Deposition at pp. 28:2-28:12; and 39:8-39:23.

[52] Exhibit I, De La Mora Deposition at pp. 28:13-29:14.



Photograph 20:  Office Roof - Wind separated
Office roof joint

24.     And here is a picture from Mr. De La Mora's report of a cosmetic hail dent on the

roof that is chalked over in red to make it visible:



Photograph 81:  Warehouse Roof - Hail dent on
roof panel

25.     Mr. De La Mora acknowledged in his deposition that the roof has cosmetic hail

dents and that small dents like those on Plaintiff's roof are not going to affect the function of the

roof:

> Q.  Okay. And you -- you noted some -- some hail dents, too. You feel the same
>      about hail dents?
> A.  Some of the hail dents are just cosmetic.  Some of them when the -- if they -- if
>      they hit the seams, then they can cause damage.  But normally, on the – on the
>      flat sections, they're -- they're okay.
> Q.  "They're okay," meaning they're just cosmetic?
> A.  Meaning that they're just a -- a little dimple on the thing.
>      . . .

A.  Maybe a little dimple on the metal.  It's not -- you know, just a small -- small
    dents like those are not going to affect the -- the function of the roof unless they
    hit the seams.[53]

26.      Mr. De La Mora was asked if there were any hail dents that hit the seams and caused

functional damage, he testified that "there's always some that hit the seams," but could not identify

any hail dents that actually caused functional damage.[54]

27.      Mr. De La Mora is also of the opinion that you would not change a roof panel just

because it has one dent, even if the dent breaks the surface finish.  The proper repair for a dent that

breaks the surface would be the application of a galvanized paint.  He made this point while

testifying about this picture that has both a mechanical impact, which broke the surface of the

finish, and a hail dent, which did not break the surface:



Photograph 44:  Warehouse Roof - Mechanical
dent and hail dent

Q.  Okay, sir.  The -- let me show you another photo.  I'm showing you Photo 44.
    Somebody's circled in white chalk, and it looks like there are two dents -- looks
    like dents on the roof and somebody wrote, M-E-C-H on one.  The other doesn't
    have a statement.  But your statement Photograph 44 says, "Warehouse roof,
    mechanical dent and hail dent."  Do you see that?
A.  Yes.
Q.  Who -- who -- who wrote that?· Was that your roofer, Jeff Holsomback?
A.  No.  That was there.  But it's obvious because, look, hail dent -- you can see the
    hail dent below didn't break the surface of the finish --

---

[53] Exhibit I, De La Mora Deposition at pp. 29:15-30:4.

[54] Exhibit I, De La Mora Deposition at pp. 30:5-30:19.

Q.  Okay.

A.  -- where the mechanical dent above broke the surface of the finish, and that's the difference between the two.  That was hit by a sharp object.  This was hit by hail.

Q.  Okay.  The hail didn't break the surface?

A.  Correct.

Q.  But the mechanical did -- does that mean like somebody drops a sharp tool or something like that?

A.  Something like that.

Q.  Okay.· Does the roof need to be repaired because of the mechanical dent that did break the surface?

A.  Well, you just -- just have one, probably be nice to put a little coating on it so you can protect the base metal.  But you wouldn't change the panel because of one little dent.

Q.  Even if it breaks the surface, you wouldn't change the panel?

A.  No.  You take care of the break in the surface.

Q.  And there's a, what, like a product that has -- a coating that you would apply to it?

A.  You can -- you can apply a coating to it, yeah.  You can have the -- that -- they say the galvanized paint that you can put in there.[55]

28.      Notwithstanding the opinions of Plaintiff's own expert, who holds the opinion that the roof requires replacement solely as a result of wind from Hurricane Harvey and who has not identified any necessary repair attributable to the hail event on May 9, 2019, Plaintiff has filed this lawsuit against State Auto seeking recovery for removal and replacement of the same roof.

## **ARGUMENT AND AUTHORITIES**

### A.  **State Auto is Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim.**

29.      Plaintiff alleges in its pleadings that State Auto is in breach of contract because "[d]espite objective evidence of weather related damages provided by Plaintiff and its representatives, Defendant State Automobile Mutual Insurance Company breached its contractual obligations under the Policy by failing to pay Plaintiff cost related benefits to properly repair the

---

[55] Exhibit I, De La Mora Deposition at pp. 50:17-52:5.

Property…."[56] But Plaintiff's breach of contract claim fails as a matter of law because: (1) Plaintiff has not met its burden to prove covered functional hail damage; (2) the only functional damage that was found to be consistent with hail was limited to 30 linear feet of tape flashing, which does not exceed the $87,500 deductible; and (3) Plaintiff has already recovered more than the appraised actual cash value for the roof replacement claim from Certain Underwriters at Lloyds, London.

30.     "Insurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally."[57] "A court's primary concern is to give effect to the intentions of the parties as expressed by the policy language."[58] Under Texas law, the insured has the initial burden of establishing coverage under the terms of the policy.[59] If the insured proves coverage, then to avoid liability the insurer must prove the loss is within an exclusion.[60] If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage.[61]

31.     Texas recognizes the doctrine of concurrent causation, which provides that "'when covered and non-covered perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage.'"[62] "Failure to provide evidence upon which a jury or court can allocate damages between those resulting from

---

[56] Doc. No. 1-1, Plaintiff's Original Petition at p. 9, ¶ 23.

[57] *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 890 (5th Cir. 2018).

[58] *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001) (citing *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983)).

[59] *Gilbert Tex. Const., LP v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).

[60] *Id*.

[61] *Id*.

[62] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993)).

covered perils and those that did not is fatal to an insured party's claim."[63] The doctrine of concurrent causation is not an affirmative defense of avoidance, but rather "a rule which embodies the basic principle that insureds are not entitled to recover under an insurance policy unless they prove their damage is covered by the policy."[64]

> a.  *Plaintiff has not met its burden to prove covered functional hail damage.*

32.     Plaintiff cannot show that the roof damage Plaintiff claims necessitates replacement of the roof occurred during the policy period.  It is Plaintiff's burden to establish that the damage being claimed occurred within the relevant policy period to be covered.[65]  Plaintiff's expert, Peter De La Mora, who was retained as an expert on both the Hurricane Harvey wind claim and the May 9, 2019 hail claim, is of the opinion that the roof requires replacement solely as a result of wind from Hurricane Harvey that bent and separated roof panels.[66]  Damage to the property that occurred prior to the June 5, 2018 effective date of the Policy, which would include all damage attributable to Hurricane Harvey from 2017, is not covered by State Auto.

33.     Plaintiff is also unable to segregate any purported functional damage to the Property resulting from the May 9, 2019 hail event from hail damage that was merely cosmetic.  State Auto has met its burden to show the applicability of the "Limitations on Coverage for Roof Surfacing." There is no coverage for cosmetic damage to roof surfacing caused by hail, including marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but that does

---

[63] *Nat'l Union Fire Ins. v. Puget Plastics Corp.*, 735 F. Supp. 2d 650, 659 (S.D. Tex. 2010); *see also Hamilton Props. v. Am. Ins. Co.*, 643 Fed. Appx. 437, 442 (5th Cir. 2016).

[64] *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App. – San Antonio 1999, pet. denied).

[65] *Emp'rs Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988) (noting that the timing of damages is a precondition to coverage, not an exception to coverage, and a general denial places the burden on the insured to prove that the property was damaged during the policy period).

[66] Exhibit J, PE Service Report authored by Peter De La Mora, at page 12.

not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.[67]   The testimony of the Nelson Forensics engineer, Matthew Oestrike, along with the opinions set forth in his signed and sealed engineering report set forth above, establish that the hail indentations have not compromised the functionality, waterproofing capabilities, or life expectancy of the roof panels and components and that repairs are not necessary or recommended.[68]   This evidence, particularly when coupled with the evidence developed through Plaintiff's own expert, Peter De La Mora, is sufficient to conclusively establish that at least some of the hail dents are merely cosmetic and not covered under the Policy.  In Mr. De La Mora's words, "[s]ome of the hail dents are just cosmetic" and are also described as "a little dimple on the metal."[69]  Plaintiff has failed to produce evidence upon which a jury or court can allocate damages between functional hail dents that occurred during the policy period from those dents that are cosmetic are that may have preexisted or be unrelated to the May 19, 2019 hail event, which is fatal to Plaintiff's claim under the doctrine of concurrent causation.

> b.  *The functional hail damage that was found to be consistent with hail does not exceed the $87,500 deductible.*

34.   As set forth in the facts section herein, a wind or hail claim under the Policy is subject to an $87,500 deductible.  State Auto estimated the cost to repair 30 linear feet of tape flashing found by Mr. Oestrike to be functional damage consistent with hail at $633.17.[70]  Plaintiff has produced no evidence that refutes State Auto's estimated cost of repair to the tape flashing.

---

[67] Exhibit A, Policy, Limitations on Coverage for Roof Surfacing, at Bates stamped page 00108.

[68] Exhibit B-5, September 5, 2019 Nelson Forensics Report authored by Matthew Oestrike, at Bates stamped page 01585; *see also* Exhibit C, Matthew Oestrike Deposition at pp. 60:22-83:17 (Mr. Oestrike testified at length as to the opinions set forth in his report) and p. 90:15-20 (Mr. Oestrike confirmed he does not intend to amend his report).

[69] Exhibit I, De La Mora Deposition at pp. 29:15-30:4.

[70] Exhibit B-6, State Auto estimate finalized September 16, 2019.

Nor has Plaintiff produced any other estimate for repairs limited to covered functional hail damage. Neither Plaintiff nor Plaintiff's expert have specifically identified any functional hail damage. And, based on the testimony of Mr. De La Mora, it would not be necessary to replace roof panels simply because they may have a little dimple from hail.  Even a break in the surface finish, such as the unrelated mechanical damage Mr. De La Mora pointed to, would only require the application of a galvanized paint product, according to Mr. De La Mora.  Plaintiff does not even have evidence that any hail impacts broke the surface finish, which would only require application of a galvanized paint to the spot.  Since Plaintiff is without evidence that functional damage solely from hail during the policy period necessitates repairs that exceed the $87,500 deductible, there is no genuine issue of material fact and State Auto is entitled to summary judgment.

> c.  *Plaintiff has already recovered more than the appraised actual cash value*
> *for the roof replacement claim.*

35.     Plaintiff settled its roof replacement claim with Certain Underwriters at Lloyds, London on February 24, 2020 in exchange for a payment in the amount of $381,887.50.[71]  Plaintiff also seeks to recover from State Auto in this lawsuit for its claim for replacement of the same damaged roof.  While State Auto disputes that there is coverage under the State Auto Policy for Plaintiff's claim, to the extent there is coverage, Plaintiff should not be permitted to recover twice for the same damaged roof.

36.     Under the circumstance where other insurance covers the same loss or damage, the Policy's "Other Insurance" provision would apply and the State Auto Policy would be excess.  The applicable "Other Insurance" provision states that "[i]f there is other insurance covering the same

---

[71] Exhibit H, Plaintiff's Settlement with Certain Underwriters at Lloyds, London, at page 3.

loss or damage … [State Auto] will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether [Plaintiff] can collect on it or not."[72]

37.     The appraisal panel set the actual cash value of Plaintiff's roof replacement claim at $359,984.62.[73]  Plaintiff's recovery under the Policy, if any, is limited to actual cash value because the Policy states that State Auto "will not pay on a replacement cost basis for any loss or damage until the lost or damaged property is actually repaired or replaced."[74]  Plaintiff has not repaired or replaced the roof and has no plans to do so.[75]  The Fifth Circuit and courts in Texas have consistently held that, when faced with similar policy language, an insured is precluded from recovering at replacement cost value.[76]  Thus, to the extent there is coverage for Plaintiff's roof claim under the State Auto Policy, State Auto would owe no more than the actual cash value of covered loss or damage in excess of the amount recovered from Certain Underwriters at Lloyds, London up to the actual cash value of the claim.  Because Plaintiff already recovered more than the full actual cash value of the claim, nothing can be due to Plaintiff under the State Auto policy.

---

[72] Exhibit A, Policy, Commercial Property Conditions, at Bates stamped page 00051.

[73] Exhibit B-11, August 7, 2020 Appraisal Award with incorporated Estimate, at Bates stamped page 01722.

[74] Exhibit A, Policy, Building and Personal Property Coverage Form, at Bates stamped page 00066.

[75] Exhibit K, John Lines Deposition (appearing as Plaintiff's FRCP 30(b)(6) witness), at pp. 18:8-19:17.

[76] *See Lerer Realty Corp. V. MFB Mut. Ins. Co.*, 474 F.2d 410, 412-13 (5th Cir. 1973) (per curiam) (modifying judgment to award actual cash value rather than replacement cost value because the damaged property had not been restored); *Versai Management Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 737-38 (5th Cir. 2010) (per curiam) (finding an insured's claim for replacement cost benefits was properly dismissed because the insured had not completed repairs on its property as required by the insurance policy); *Fitzhugh 25 Partners, L.P. v. Kiln Syndicate KLN501*, 261 S.W.3d 861, 863 (Tex. App. Dallas 2008, pet. denied) (concluding the insured was required to replace the damaged property as a condition precedent to its recovery under the policy and that its failure to do so negates its entitlement to recover replacement costs).

**B. The Court Should Grant Summary Judgment as to Plaintiff's Claims for Common Law and Statutory Bad Faith Because Plaintiff Cannot Establish a Breach of Contract and Independent Injury, and Under the Bona Fide Dispute Doctrine.**

38.     State Auto's alleged breach of contract is the basis of the remainder of Plaintiff's case. Without a viable breach of contract claim, Plaintiff's extra-contractual claims fail.[77] As set forth above, Plaintiff's breach of contract claim fails as a matter of law. Furthermore, to establish the independent tort of bad faith, an insured's damages must be distinct from the benefits it would receive under the insurance policy.[78] Plaintiff does not allege an independent injury in its live pleading.[79] Accordingly, State Auto is entitled to summary judgment on Plaintiff's claims for common law bad faith and for violations of Texas Insurance Code Chapter 541, including the Chapter 541 claims brought under the Deceptive Trade Practices Act and Section 542.003 of the Texas Insurance Code, based upon Plaintiff's inability to establish a viable breach of contract claim.

39.     Irrespective of the viability of Plaintiff's breach of contract claim, State Auto is entitled to summary judgment on Plaintiff's bad faith claims as a bona fide dispute existed regarding the presence, cause, and scope of alleged damage to the roof.  In Texas, an insurer has a duty to deal fairly and in good faith with an insured in processing claims.[80] Claims for violations of Chapter 541 and for breach of the duty of good faith and fair dealing "can be collectively analyzed under the same standard as a common law bad faith claim."[81] That is to say, when an

---

[77] *Hamilton Props.*, 643 Fed. Appx. at 442 (noting that in general, an insured does not have a bad faith claim in the absence of a breach of contract by the insurer").

[78] *Twin Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666-67 (Tex. 1995).

[79] *See generally* Doc. No. 1-1, Plaintiff's Original Petition.

[80] *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103. F.3d 456, 459 (5th Cir. 1997).

[81] *Hamilton Props.*, 643 Fed. Appx. at 442.

insured asserts a wrongful denial or delay in the payment of policy benefits and brings causes of action under the Texas Insurance Code along with a common law bad faith claim, "if there is no merit to the bad faith claim, there can be no liability on the statutory claims."[82]

40.     Under Texas law, an insurer is not liable for bad faith if there was any reasonable basis for denial of coverage."[83] "'If nothing is presented suggesting that the evidence upon which the insurer relied was obtained in an unobjective or unfair manner and if that evidence, viewed in isolation, reasonably suggests that the insured's claim is invalid or questionable, the insurer's basis is reasonable as a matter of law."[84] "A disagreement among experts as to whether the cause of the loss is covered by the policy will not support a judgment for bad faith."[85] An insurer may be entitled to summary judgment on an insured's bad faith claims, even where the insurer's coverage position is ultimately proven incorrect.[86]

---

[82] *Kondos v. Allstate Tex. Lloyds*, No. 1:03-CV-1440, 2005 U.S. Dist. LEXIS 37661, at *13 (E.D. Tex. Apr. 25, 2005); *see also Robinson v. State Farm Fire & Cas. Co.*, 13 F.3d 160, 162 (5th Cir. 1994) ("[t]he Texas Insurance Code . . . [is] in large measure[] statutory fleshings-out of the already existing common law requirements.").

[83] *Higginbotham*, 103 F.3d at 459; *see also Alhamzawi v. GEICO Cas. Co.*, 216 F. Supp. 3d 764, 768 (N.D. Tex. 2016); *Tucker v. State Farm Fire & Cas Co.*, 981 F. Supp. 461, 465 (S.D. Tex. 1997) ("Plaintiffs' extra-contractual claims live or die depending on whether Plaintiff's bad-faith claim has any viability.").

[84] *Torres v. Lloyd's of London Syndicate #4242*, No. 1:10-cv-200, 2011 U.S. Dist. LEXIS 143728, at *19 - *20 (S.D. Tex. Dec. 14, 2011) (quoting *Thompson v. Zurich Am. Ins. Co.*, No. A-09-CA-493-SS, 2010 U.S. Dist. LEXIS 99144, at *5 (W.D. Tex. Sept. 21, 2010)).

[85] *Torres*, 2011 U.S. Dist. LEXIS, at *25 (quoting *Connolly v. Service Lloyds Ins. Co.*, 910 S.W.2d 557, 561 (Tex. App. – Beaumont 1995)); *see also Russell v. Scottsdale Ins. Co.*, No. 4-10-CV-3057, 2014 U.S. Dist. LEXIS 143882, at *20 - *21 (S.D. Tex. Sept. 30, 2014).

[86] *See, e.g. U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267 (Tex. 1997) (affirming trial court's summary judgment for insurer on bad faith claims, where insurer's interpretation was arguable, albeit erroneous); *Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F.3d 875, 882 (5th Cir. 2004) (affirming district court's summary judgment for insurer on bad faith claim because a bona fide dispute existed between insurer and insured); *see also Higginbotham*, 103 F.3d at 459 ("as long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is

41.     State Auto reasonably investigated and adjusted Plaintiff's claim. State Auto assigned the claim to Ashley Manning who promptly acknowledged and began the investigation of the claim.[87]  Claim representative Gerald Ptacek coordinated an inspection of the property with Plaintiff's public adjuster, Ray Demeritt, and the engineer State Auto retained to opine on the scope of damage and any necessary repairs attributable to the hail event on May 9, 2019.[88]  State Auto reasonably relied upon the opinions of engineer Matthew Oestrike, who concluded that the indentations on Plaintiff's roof have not compromised the functionality, waterproofing capabilities, or life expectancy of the roof panels and components.[89]  Plaintiff's own expert engineer, Peter De La Mora, has not disagreed with Mr. Oestrike's opinions as they relate to hail damage at the Property.  Ms. Manning's claim decision letter provided a reasonable explanation of State Auto's claim decision, explained that the covered damage did not exceed the deductible, and included the State Auto estimate and report from Nelson Forensics.[90]

42.     Even if Plaintiff's expert had an opinion that was contrary to the opinions of engineer Matthew Oestrike, the evidence would not negate the fact that a reasonable investigation was conducted.  The summary judgment evidence demonstrates that at worst, a *bona fide* dispute existed with respect to alleged covered damage to Plaintiff's roof. Thus, State Auto asks for summary judgment as to Plaintiff's claims for violations of Chapter 541 of the Texas Insurance

---

eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith.").

[87] Exhibit B, Declaration of Ashley Manning at ¶¶ 3-4.

[88] *Id.* at ¶ 4.

[89] Exhibit B-5, September 5, 2019 Nelson Forensics Report authored by Matthew Oestrike, at Bates stamped page 01585.

[90] Exhibit B-7: September 26, 2019 Letter from Ashley Manning (without attachments).

Code, Section 542.003 of the Texas Insurance Code, the Deceptive Trade Practices Act, and for breach of the duty of good faith and fair dealing.

### C. The Court Should Grant Summary Judgment as to Plaintiff's Chapter 542 Prompt Payment of Claims Act claims.

43.     Plaintiff alleges State Auto violated § 542.058(a) by failing to pay the claim and seeks penalties and fees under § 542.060.  Plaintiff bears the burden to establish its right to Chapter 542 remedies.[91] To prevail under Chapter 542 for a violation of the Texas Prompt Payment of Claims Act statutes, an insured must show the insurer "is liable for the claim."[92] Plaintiff cannot establish this fact because summary judgment is proper as to Plaintiff's breach of contract claim.[93]

44.     Moreover, Plaintiff fails to even allege the date on which State Auto should have paid the claim or otherwise violated the statute.

45.     Accordingly, State Auto is entitled to summary judgment as to Plaintiff's Chapter 542 cause of action.

### D. The Court Should Grant Summary Judgment as to Plaintiff's Claim for Attorney's Fees

46.     Plaintiff seeks an award of attorney's fees under Chapter 38 of the Texas Civil Practices & Remedies Code, the Texas Insurance Code, and the Deceptive Trade Practices Act. Texas Insurance Code 542A.003 requires that a claimant provide written notice to the person against whom they intend to bring a claim prior to filing suit. Section 542A.007(d) provides that if a defendant proves that it was entitled to but was not given a presuit notice, "the court may not award to the claimant any attorney's fees incurred after the date the defendant files the pleading

---

[91] *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004).

[92] Tex. Ins. Code § 542.060(a); *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015).

[93] *Weiser-Brown*, 801 F.3d at 518.

with the court."[94] Numerous courts have applied Section 542A.007(d) as a bar to recovery of fees when pre-suit notice is not provided in accordance with the notice requirements.[95]  Plaintiff failed to provide a pre-suit notice letter.[96]  Thus, Plaintiff failed to meet the requirements of §542A.003 and Plaintiff cannot recover fees in this matter pursuant to §542A.007(d).

47.     Furthermore, as set forth above, Plaintiff's breach of contract cause of action fails as Plaintiff cannot satisfy its burden to establish a breach of the Policy and because Plaintiff failed to segregate covered and non-covered damages. In addition, Plaintiff's statutory extra-contractual claims are unsupported by the evidence and fail to overcome the existence of a *bona fide* dispute. Thus, Plaintiff cannot recover on its claim for attorney's fees.

## **PRAYER**

48.     WHEREFORE, PREMISES CONSIDERED, Defendant State Automobile Mutual Insurance Company respectfully prays that the Court grant this Motion For Summary Judgment, on all causes of action brought by Plaintiff and grant all such other and further relief to which it may show itself justly to be entitled.

---

[94] Tex. Ins. Code Sec. 542A.007(d).

[95] *See, e.g., Nexxt Holding, Inc. v. Travelers Cas. Ins. Co. of Am.,* No. H-20-817, 2020 U.S. Dist. LEXIS 175429, at *4 (S.D. Tex. Sept. 24, 2020); *Vuong Huynh Corp. v. Certain Underwriters at Lloyd's,* No. 1:19-CV-00373, 2020 U.S. Dist. LEXIS 223779, at *5 - *6 (E.D. Tex. Sept. 22, 2020); *Tadeo v. Great N. Ins. Co.*, No. 3:20-CV-00147-G, 2020 U.S. Dist. LEXIS 132214, at *24 (N.D. Tex. July 27, 2020); *PMG Int'l, Ltd. v. Travelers Indem. Co. of Am.,* No. SA-20-CV-00145-XR, 2020 U.S. Dist. LEXIS 195060, at *4 - *5 (W.D. Tex. May 11, 2020); *Kiwi Hosp. – Hous., LLC v. Mt. Hawley Ins. Co.*, No. H-19-3173, 2020 U.S. Dist. LEXIS 201860, at *6 (S.D. Tex. May 7, 2020); *Gateway Plaza Condo v. Travelers Indem. Co. of Am.*, No. 3:19-CV-01645-S, 2019 U.S. Dist. LEXIS 221244, at *4 - *6 (N.D. Tex. Dec. 23, 2019); *Tarantino Props. v. Commer. Ins. Grp.*, No. H-19-384, 2019 U.S. Dist. LEXIS 74922, at *4 (S.D. Tex. May 3, 2019); *J.P. Columbus Warehousing, Inc. v. Unt. Fire & Cas. Co.*, No. 5:18-cv-100, 2019 U.S. Dist. LEXIS 18382, at *6 - *16 (S.D. Tex. Jan. 14, 2019), *adopted by* 2019 U.S. Dist. LEXIS 18358 (S.D. Tex. Feb. 4, 2019).

[96] Exhibit B, Declaration of Ashley Manning at ¶ 11.

Respectfully submitted,

*/s/ Patrick M. Kemp*
Patrick M. Kemp
Texas Bar No. 24043751
Southern District No. 38513
pkemp@smsm.com
Segal McCambridge Singer and Mahoney
100 Congress Ave., Suite 800
Austin, Texas 78701
(512) 476-7834
(512) 476-7832 – Facsimile

**ATTORNEY-IN-CHARGE FOR DEFENDANT**
**STATE AUTOMOBILE MUTUAL**
**INSURANCE COMPANY**

OF COUNSEL:

Robert G. Wall
Texas Bar No. 24072411
Southern District No. 1117137
rwall@smsm.com
Segal McCambridge Singer and Mahoney
100 Congress Avenue, Suite 800
Austin, Texas 78701
(512) 476-7834
(512) 476-7832 – Facsimile

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing instrument has been served electronically via efile this the 4th day of June, 2021 to:

James M. McClenny
J. Zachary Moseley
Derek L. Fadner
McClenny Moseley & Associates, PLLC
516 Heights Boulevard
Houston, Texas 77007
james@mma-pllc.com
zach@mma-pllc.com
derek@mma-pllc.com

*/s/ Patrick M. Kemp*
Patrick M. Kemp