```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
 2                       HOUSTON DIVISION

 3  COLE & ASHCROFT, LP DBA       )
    SHUTTERS PLUS,                )
 4                                )
               Plaintiff,         )
 5                                )
    VS.                           ) CIVIL ACTION NO.
 6                                ) 4:20-cv-03507
    STATE AUTOMOBILE MUTUAL       )
 7  INSURANCE COMPANY,            )
                                  )
 8             Defendant.         )

 9

10           ------------------------------------

11              REMOTE ORAL DEPOSITION OF

12                  PETER DE LA MORA

13                   MARCH 11, 2021

14           ------------------------------------

15

16      REMOTE ORAL DEPOSITION OF PETER DE LA MORA,

17  produced as a witness at the instance of the DEFENDANT,

18  and duly sworn, was taken in the above-styled and

19  -numbered cause on March 11, 2021, from 11:04 a.m. to

20  12:13 p.m., via Zoom, before Mercedes Arellano, CSR in

21  and for the State of Texas, reported by machine

22  shorthand, in Dallas County, Texas, pursuant to the

23  Federal Rules of Civil Procedure and the current

24  emergency order regarding the COVID-19 State of

25  Disaster.
```

**DEFENDANT'S EXHIBIT A**

```
 1              R E M O T E   A P P E A R A N C E S

 2   FOR THE PLAINTIFF:

 3        Mr. Derek L. Fadner
          MCCLENNY MOSELEY & ASSOCIATES, PLLC
 4        516 Heights Boulevard
          Houston, Texas  77007
 5        (844) 662-7552
          (713) 322-5953 (fax)
 6        Derek@mma-pllc.com

 7


 8   FOR THE DEFENDANT:

 9        Mr. Patrick M. Kemp
          SEGAL MCCAMBRIDGE SINGER & MAHONEY
10        100 Congress Avenue
          Suite 800
11        Austin, Texas  78701
          (512) 476-7834
12        (512) 476-7832 (fax)
          Pkemp@smsm.com
13


14
     ALSO PRESENT:
15
     Mr. Robert Mendoza, Kim Tindall & Associates' Zoom Host
16


17


18


19


20                       REPORTER'S NOTE

21           Uh-huh = Yes - Affirmative response

22           Huh-uh = No  - Negative response

23      Quotation marks are used for clarity and do not

24           necessarily indicate a direct quote.

25
```

INDEX

                                                                           PAGE

Appearances......................................... 2

Stipulations........................................ 4

PETER DE LA MORA

     Examination by Mr. Patrick M. Kemp.............. 4


Reporter's Certificate.............................. 54

```
 1                  P R O C E E D I N G S
 2                  (All parties present have hereby waived the
 3   necessity of the reading of the statements by the
 4   stenographer according to Rule 30(b)(5).)
 5                  THE STENOGRAPHER:  We are now on the record
 6   for the Zoom deposition of Peter De La Mora.  The date
 7   is March 11th, 2021.  The time is 11:04 a.m.
 8                  Will everyone please state their name,
 9   their location, and if counsel will please state who
10   they represent.
11                  MR. KEMP:  Patrick --
12                  MR. FADNER:  Good morning -- oh.  Go ahead,
13   Patrick.
14                  MR. KEMP:  Patrick Kemp.  I represent State
15   Automobile Mutual Insurance Company, appearing from
16   Austin, Texas.
17                  MR. FADNER:  And good morning.  Derek
18   Fadner, and I represent Cole & Ashcroft, the plaintiffs
19   in this case.  And I'm appearing from Houston, Texas.
20                  THE WITNESS:  I am Peter De La Mora.  I'm
21   the expert witness.
22                  THE STENOGRAPHER:  And where are you
23   located, Mr. De La Mora?
24                  THE WITNESS:  I'm located in Houston, in my
25   office in Houston, Texas.
```

```
 1        A.   That's correct.
 2        Q.   So you -- you've got a number of references to
 3   crimps from foot traffic, some dents from hail; you've
 4   got sealant in various areas; you've got blown-off seam
 5   gaskets, wind displaced closure strips, screws covered
 6   with sealant, screws that have been -- I guess are
 7   missing at -- at various places.  Right?
 8                  All of those things -- you put all of
 9   those things into account, correct, and -- and concluded
10   it was wind from Hurricane Harvey, right?
11        A.   That's correct.  It's very consistent with
12   that.
13        Q.   Now, let's talk about the -- the crimps.
14   You're not saying that crimps from foot traffic were
15   wind from Hurricane Harvey, are you?
16        A.   Of course not.  I'm not saying that you have to
17   do anything about those crimps either.
18        Q.   Okay.  Nothing really needs to be done about
19   crimps?
20        A.   No.  That happens once in a while when -- when
21   people don't think that they have to step on the high
22   points of the roof, rather than on the flat section of
23   it.
24        Q.   I understand.  I think I understand what you're
25   saying.  You're saying those crimps are caused when
```

1  someone steps on the lower flat portion that's not
2  supported as well, correct?
3       A.  No.  When they step on the -- on the -- on
4  the lifted -- the top sections, they -- the...
5       Q.  The seams?
6       A.  The seams.
7       Q.  Oh, so people walk on the seams?
8       A.  Yeah.  They should walk on the flat section.
9  When you walk on metal roofs, you walk on the flat
10 section.  Because if you step on the seams, that's what
11 you do, you crimp them.
12      Q.  Okay.  But those don't -- those crimps are --
13 are just cosmetic.  They don't need repairs, right?
14      A.  That's correct.
15      Q.  Okay.  And you -- you noted some -- some hail
16 dents, too.  You feel the same about hail dents?
17      A.  Some of the hail dents are just cosmetic.  Some
18 of them when the -- if they -- if they hit the seams,
19 then they can cause damage.  But normally, on the -- on
20 the flat sections, they're -- they're okay.
21      Q.  "They're okay," meaning they're just cosmetic?
22      A.  Meaning that they're just a -- a little dimple
23 on the thing.
24      Q.  I'm sorry.  I didn't hear the last part.  It
25 may be --

1       A.   Maybe a little dimple on the metal.  It's
2  not -- you know, just a small -- small dents like those
3  are not going to affect the -- the function of the roof
4  unless they hit the seams.
5       Q.   Did you find any that hit the seams that caused
6  functional damage?
7       A.   You know, there's always some that hit the
8  seams.  I mean, hail doesn't have a name.  It just comes
9  down.
10              Photograph 22 shows it -- they hit on a
11 seam.  But...
12      Q.   The -- the photo that I have of yours that's
13 marked Photo 22 says, "Office roof sealing applied to
14 roof bent jack."
15      A.   That's correct.  Or around the bent jack,
16 actually.
17      Q.   You're saying Photograph 22 shows they had a
18 dent from hail?
19      A.   No.  That was probably wind damage.
20      Q.   Okay.  So Photo 22 is wind damage, right?
21      A.   Correct.
22      Q.   Okay.  So that Photo 22 shows a bunch of
23 sealant around the roof penetration then, right?
24      A.   Yes, correct.
25      Q.   And so are you saying the sealant itself

1  establishes that there was wind damage?
2       A.  No.  The sealant establishes that there was
3  some damage at the place where the pipe goes through.
4  And the pipe, the -- probably broke the jack, the rubber
5  jack.
6       Q.  And your opinion is based on looking at this
7  photograph -- based on looking at this photograph and
8  seeing the sealant?
9       A.  Pardon?
10      Q.  I -- I'm trying to understand what's the basis
11 of your opinion.  You stated that Photograph 22 states,
12 "Office roof sealing -- sealant applied to roof bent
13 jack."
14      A.  Right.
15      Q.  You just told me that that is wind damage,
16 right?
17      A.  Most likely, yes.
18      Q.  Okay.  And the basis of that opinion is what?
19      A.  The basis of that opinion is that we had a
20 hurricane, and there was pretty much a lot of wind in
21 that area.  And the wind affected the roof, and the wind
22 on a roof like this makes it vibrate up and down.  And
23 that broke the seal of the -- around the pipe.  And they
24 went back and replaced it or damaged the -- the roof
25 jack, the membrane of the -- that fits, makes the

```
 1  from 2019?
 2       A.  Correct.
 3       Q.  And those hail dents, though, it's still your
 4  opinion that there was wind damage during Hurricane
 5  Harvey that -- that requires the -- necessitates removal
 6  and replacement of the roof, right?
 7       A.  That's correct.
 8       Q.  All right, sir.  I'm going to share my screen
 9  with you here.  I'm showing you what has been marked as
10  Exhibit 18.  Do you recognize that as your report from
11  November 8, 2019?
12       A.  Yes.
13       Q.  And that's addressed to Derek Fadner and
14  McClenny Moseley & Associates?
15       A.  Correct.
16       Q.  And that's your -- your stamp on it, if you
17  will, correct?
18       A.  That's right.
19       Q.  Does the stamp and your signature signify
20  something?
21       A.  Signify that I am registered as a professional
22  engineer with the State of Texas -- or licensed.
23       Q.  All right, sir.  You've discussed -- I want
24  to -- I want to go to your opinions and then make sure I
25  understand.
```

```
 1                  Here beginning at Page 12, you begin
 2   with, "In our opinion, wind during Hurricane Harvey had
 3   sufficient force to cause the observed damage at the
 4   Cole & Ashcroft, LP, building.  As a result of wind
 5   damage during Hurricane Harvey, the metal roofs of the
 6   office and warehouse and gutters of the
 7   Cole & Ashford" -- I think that's a mistake -- "LP
 8   building require removal and replacement."
 9                  Did I read that correct?
10        A.   That's correct.
11        Q.   Then you state, "In the interior of the
12   building, there is water damage from roof leaks as
13   follows."
14        A.   Right.
15        Q.   And then you go on to identify areas where
16   there's water damage ceiling tiles, water damage wood
17   floors, and other -- in -- in several rooms throughout
18   the building, including lobby, cubicle room reception,
19   Office 4, Office 5, conference room, Office 7, kitchen,
20   studio, Conference Room 2, Office 3, and the warehouse.
21              Right?
22        A.   That's correct.
23        Q.   Then you say, "The interior water damage
24   requires restoration," right?
25        A.   Right.
```

1        Q.   What I didn't see in there was any opinion
2   about what caused the water damage, other than you
3   stated it's from roof leaks, right?
4        A.   Right.
5        Q.   Now, do you have an opinion as to when the
6   water damage occurred?
7        A.   Yeah.  It occurred during the hurricane.
8        Q.   During Hurricane Harvey?
9        A.   Right.
10       Q.   Okay.  And what's the basis of that opinion?
11       A.   The basis of that opinion is that Hurricane
12  Harvey created openings in the roof that allowed water
13  to go in.
14       Q.   Okay.  Attached to your report, the pictures
15  taken by Cole & Ashcroft's public adjustor, do you
16  recall that?
17       A.   Yes.
18       Q.   For what purpose did you attach his pictures?
19       A.   Well, I had them, I looked at them, I attached
20  them.  They show damage to the building.  He was there a
21  lot earlier than we were, so we -- he had a much better
22  view of the damage on the interior than we did.
23       Q.   Mr. Demeritt, whose photos these are, made
24  chalk note on the roof, and here's -- here's one, his
25  Photo 16.

1              So I'm looking at Exhibit C to your report,
2    correct?
3         A.   Correct.
4         Q.   And then he notes, do you see it in yellow,
5    "temp repair"?  He puts an arrow.
6         A.   I'm sorry.  Which picture are you looking at?
7              Oh, yes.  I see it.
8         Q.   Do you agree that that is a -- not a -- a
9    repair that would be a -- considered a -- a permanent
10   repair?
11        A.   No, but it's on the tape in there.  It was a
12   little bit of pookie.  That's not a temporary repair.
13        Q.   Could you state that again, a little -- a
14   little bit of "pookie"?
15        A.   Pookie, the -- the tar.
16        Q.   What's it called?
17        A.   I call it pookie.
18        Q.   How do you spell that?
19        A.   That's me.  That's -- that's not a technical
20   term.
21        Q.   Okay.  How do you spell it for the court
22   reporter?
23        A.   P-U-K-Y [sic], I guess.
24        Q.   Okay.  So Photo 16 does, in your opinion,
25   depict a temporary repair to the roof, right?

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
 2                       HOUSTON DIVISION

 3   COLE & ASHCROFT, LP DBA      )
     SHUTTERS PLUS,               )
 4                                )
                Plaintiff,        )
 5                                )
     VS.                          ) CIVIL ACTION NO.
 6                                ) 4:20-cv-03507
     STATE AUTOMOBILE MUTUAL      )
 7   INSURANCE COMPANY,           )
                                  )
 8              Defendant.        )

 9

10                   REPORTER'S CERTIFICATION
             REMOTE DEPOSITION OF PETER DE LA MORA
11                      MARCH 11, 2021

12

13        I, Mercedes Arellano, Certified Shorthand Reporter

14   in and for the State of Texas, hereby certify to the

15   following:

16        That the witness, PETER DE LA MORA, was duly sworn

17   by the officer and that the transcript of the oral

18   deposition is a true record of the testimony given by

19   the witness;

20        That examination and signature of the witness to

21   the deposition transcript was waived by the witness and

22   agreement of the parties at the time of the deposition;

23        That the original deposition was delivered to

24   MR. PATRICK M. KEMP;

25        That the amount of time used by each party at the
```

```
 1  deposition is as follows:
 2       Mr. Derek L. Fadner  - 00 HOURS:00 MINUTE(S)
 3       Mr. Patrick M. Kemp  - 01 HOURS:09 MINUTE(S)
 4       That $_____ is the deposition officer's
 5  charges to the Party for preparing the original
 6  deposition transcript and any copies of exhibits;
 7       That pursuant to information given to the
 8  deposition officer at the time said testimony was taken,
 9  the following includes all parties of record:
10       Mr. Derek L. Fadner, Attorney for Plaintiff
11       Mr. Patrick M. Kemp, Attorney for Defendant
12       That a copy of this certificate was served on all
13  parties shown herein on _____ and filed
14  with the Clerk pursuant to Rule 203.3.
15       I further certify that I am neither counsel for,
16  related to, nor employed by any of the parties or
17  attorneys in the action in which this proceeding was
18  taken, and further that I am not financially or
19  otherwise interested in the outcome of the action.
20       Certified to by me this ___ day of March, 2021.
21
                                 _____
22                               Mercedes Arellano, Texas CSR 8395
                                 Expiration Date: January 31, 2022
23                               KIM TINDALL & ASSOCIATES, LLC
                                 Firm Registration No. 631
24                               16414 San Pedro, Suite 900
                                 San Antonio, Texas 78232
25                               Phone 866.672.7880
```